IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA LINHART,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF ERIE and<br>JASON STEVENS,<br><br>　　　　Defendants. | Civil Action<br><br>No. 1:23-cv-114<br><br><br><br><br>JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Rebecca Linhart, by undersigned counsel, files this Civil Complaint, and in support states the following.

### I. Jurisdiction and Administrative Exhaustion

1. Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2. Plaintiff has exhausted the administrative remedies set forth under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as follows:

   a. On August 24, 2022, she timely filed a charge of discrimination with the alleging sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and cross-filed with Pennsylvania Human Relations Commission ("PHRC").

   b. On March 24, 2023, the U.S. Department of Justice issued a Notice of Right to Sue; and

   c. Plaintiff filed this action within 90 days of receipt of that Notice.

### II. Parties

3. Plaintiff, Rebecca Linhart, is an adult female individual who resides in Erie, Pennsylvania.

1

4. Defendant, County of Erie ("County") is a political subdivision of the Commonwealth of Pennsylvania, with a principal place of business located at Erie County Courthouse, 140 West Sixth Street, Suite 504, Erie, Pennsylvania.

5. In 2022, Defendant County employed at least 15 employees in 20 or more weeks of the calendar year.

6. At all times relevant to this matter, Defendant County acted by and through its duly authorized agents and/or employees, who were acting within the course and scope of their employment, and under the color of state law.

7. Defendant, Jason Stevens, is a lieutenant employed by Defendant County at the Erie County Prison.

8. At all times relevant, Defendant Stevens acted under the authority granted to him Defendant County and by state law.

### III. Facts

**A. Background**

9. Ms. Linhart was a W-2 employee of Stairways Behavioral Health, Inc. ("Stairways") from on or about June 28, 2021 to June 17, 2022.

10. During her entire employment with Stairways, Stairways assigned Ms. Linhart to work as a Licensed Practical Nurse/Psychiatric Nurse at the Erie County Prison.

11. The Erie County Prison is owned and operated by Defendant County.

12. At all times relevant to this matter, Defendant contracted with Stairways to provide mental health services at the Erie County Prison.

13. When Ms. Linhart began working at the Erie County Prison, Defendant County required her to undergo two days of computerized training regarding its policies and procedures.

14. The above-referenced training contained training on sexual harassment.

15. A "training lieutenant" employed by Defendant County oversaw and implemented the above training.

16. Ms. Linhart was expected to follow all policies and procedures of Erie County Prison.

17. Ms. Linhart's direct supervisor from Stairways worked offsite at Stairways' main office, rather than onsite at Erie County Prison.

18. When an issue or problem arose at the Erie County Prison, Ms. Linhart was instructed to speak with a Captain or Lieutenant employed by Defendant County.

19. Ms. Linhart was required to wear an Erie County Prison shirt while working.

20. Ms. Linhart's team leader commented more than once that although Stairways was their employer, if Erie County did not like a Stairways employee, they would not have a job.

21. Ms. Linhart was issued an email address from Defendant County for all Erie County Prison employee correspondence.

**B. Facts Related to Sexual Harassment**

22. As further set forth below, the work environment at Erie County Prison was pervaded by comments and actions of an openly sexual nature.

   **1. Defendant Stevens**

23. For example, Defendant Stevens was regularly flirtatious with Ms. Linhart, and seemed to regularly find reasons to come into the Psych office when she was there.

24. On one occasion, when Ms. Linhart was in Defendant Stevens' office to have him sign paperwork and was leaning on his desk, he spanked her rear end.

25. Shocked at what had just occurred, Ms. Linhart responded, "that was ballsy."

26. In response, Defendant Stevens stated ballsy would have been if he had lifted his middle finger upward and gave her a little rectal stimulation. He made a suggestive motion with his finger as he said this.

27. On another occasion, Defendant Stevens stood next to Ms. Linhart while she was sitting at her desk, such that his crotch was at her eye level.

28. He then made the remark "see if you can make it move," referring to his penis.

**2. Captain Sean Bolt**

29. In approximately April 2022, Captain Bolt started confiding in Ms. Linhart regarding some personal issues.

30. During one conversation, he told Ms. Linhart that his friends said he needed to have an affair. He added that he wanted to find a married woman because married women do not get attached.

31. Ms. Linhart got the impression from Captain Bolt's demeanor during this conversation that he was hinting around to see if she was interested in having an affair, so she shut the conversation down.

32. The next day, Captain Bolt apologized to Ms. Linhart and said he did not want her to think he was hitting on her.

33. Shortly thereafter, Captain Bolt began texting a counselor who was also married.

34. The counselor openly bragged that she had Captain Bolt up all night with a "boner."

35. She then showed Ms. Linhart several "memes" containing sexual jokes and innuendos that Captain Bolt had sent.

**3. Deputy Warden Ron Bryant**

36. On numerous occasions throughout Ms. Linhart's employment, Deputy Warden

Bryant would come into the Psych office to discuss inmates.

37. During these visits, Deputy Warden Bryant would openly flirt with Ms. Linhart's Stairways coworker, Larissa, and asked her to speak in a country accent.

38. Deputy Warden Bryant ran "team meetings" including all Psych staff and Drug and Alcohol Team members from Stairways.

39. During these meetings, there was little to no discussion with other staff. Instead, Deputy Warden Bryant would flirt with Larissa.

40. Eventually, Ms. Linhart told Larissa that she no longer wanted to attend the team meetings because she was tired of watching the "dating game."

41. Shortly thereafter, Deputy Warden Bryant started treating Ms. Linhart in a less favorable manner.

### 4. Corrections Officer Doug Patterson

42. One morning, Ms. Linhart was walking through the Medical Department after assessing an inmate. She tried to walk around Corrections Officer Patterson, but he kept getting in front of her.

43. After Ms. Linhart made numerous attempts to get around Corrections Officer Patterson, he placed his chest against hers and stated, "I just wanted to feel them up close."

### 5. The "password" to the RHU

44. When needing to access the Restricted Housing Unit (RHU) at Erie County Prison, employees would typically press a button and announce their name to be buzzed in.

45. On one occasion, Ms. Linhart attempted to access the RHU and heard laughing over the intercom. Eventually, a Corrections Officer named Jules asked "what's the password?"

46. The first time, Ms. Linhart said she did not know the password but asked if she

5

could please come in.

47. Corrections Officer Jules told Ms. Linhart to ask her Stairways coworker, Larissa, for the password.

48. Ms. Linhart went to the Psych office to ask Larissa for the password. Shortly thereafter, Jules came into the office and said to Larissa, "you haven't trained the new girl?" He then asked Larissa to "sing the song."

49. Larissa then started singing a song called "F*ck the Pain away," which contains raunchy lyrics, and did a sexy dance.

50. On another occasion, Jules again asked for "the password" to access the RHU. When she refused to sing the sexually explicit song, the corrections officers waited several minutes before letting her into the RHU.

6. **Counselor Heather Martin**

51. Heather Martin, a counselor employed by Defendant County, attended meetings along with Ms. Linhart, other pod counselors, and the Psych nurses employed by Stairways.

52. During the first meeting that Ms. Linhart attended with Counselor Martin, Counselor Martin made numerous sexually inappropriate remarks, including referencing "69ing" Lt. Stevens. She stated in front of other employees "baby, I know your favorite number" and laughed as Lt. Stevens winked, replying "yeah you do".

53. In another meeting, Counselor Martin announced that she had more pornography on her phone than the average person. She also claimed she recently bought a 70-inch television to watch pornography because she "likes to see the veins."

7. **Effect on Ms. Linhart**

54. Management-level employees of Defendant with a duty to report sexual harassment

regularly witnessed the above conduct.

55. The above harassment was distressing enough to Ms. Linhart to cause her to want at least some reprieve from the work environment.

56. On or about June 6, 2022, Ms. Linhart requested from her Stairways supervisor a change in her work schedule. The request was to work four days a week instead of five, but still fulfill 37.5 hours.

57. Stairways denied the schedule reduction that Ms. Linhart requested, even though they recently granted the same request to Counselor Williams to work 4 ten-hour days.

58. Ms. Linhart then discussed the possibility of resignation with her Stairways supervisor. However, her resignation was never confirmed, and she had no anticipated employment end date.

**C. Ms. Linhart's Complaint**

59. On or about June 8, 2022, Ms. Linhart reported sexual harassment to Deputy Warden Michael Holman.

60. Deputy Warden Holman demanded that Ms. Linhart provide specifics details of the harassment.

61. Ms. Linhart provided some details involving a female Stairways employee, including that all the County corrections officers called this coworker "camel toe" due to her wearing yoga pants; that same coworker talked about giving a male County employee a "constant boner;" that same coworker showed Ms. Linhart dirty texts with male County employees; and that same coworker saying about a male Erie County employee, "Now that I know what his dick looks like and the fact that he wants to cum in my mouth, it's kind of affecting my attraction level today."

62. Ms. Linhart explained to Deputy Warden Holman that she worked in a "boys club"

and did not want any trouble or retaliation.

63. In response, Deputy Warden Holman told Ms. Linhart that he was not merely asking, but he was he "ordering" her to tell him which male employees were involved.

64. Ms. Linhart then named two Erie County employees, Lt. Stevens and Captain Bolt.

65. Deputy Warden Holman commented that Ms. Linhart was describing was the "definition of a hostile work environment."

66. The same day that Ms. Linhart made the above complaint, two different Deputy Wardens, Bryant and Seymour, met with her Stairways team leader.

67. Erie County Deputy Wardens also met with Lt. Stevens and Captain Bolt, following paging both employees to report to the office individually.

68. Upon information and belief, the above meetings between the Deputy Wardens and Erie County and Stairways employees related to Ms. Linhart's complaint of sexual harassment.

**D. Ms. Linhart's termination**

69. On June 9, 2022, the day after Ms. Linhart made the above complaint to Deputy Warden Holman, Ms. Linhart's supervisor at Stairways was interested in keeping her employed, and asked her where she "needed to be" in terms of compensation to remain employed.

70. However, the very next day, the same supervisor informed Ms. Linhart that there had been numerous complaints about her.

71. Upon information and belief, the above-referenced complaints came from Defendant County's employees, as part of an effort to undermine her complaint of sexual harassment.

72. On June 13, 2022, Stairways asked Ms. Linhart for clarification as to whether she was resigning by the end of the day on June 15.

73. On June 15, 2022, Ms. Linhart informed Stairways that she was not resigning.

74. However, on June 17, 2022, Stairways discharged Ms. Linhart, claiming it was accepting her "resignation" effective immediately.

75. More than two hours before Stairways notified Ms. Linhart of her termination, it notified Deputy Warden Holman of its decision to discharge Ms. Linhart.

76. Upon information and belief, employees of Erie County intended to, and did, cause Stairways to discharge Ms. Linhart by providing false information.

## Count I
## Title VII: Hostile Work Environment
## Linhart v. County of Erie

77. Plaintiff incorporates the allegations of Paragraphs 1 through 76 as if fully restated.

78. Defendant County's management-level and corrections officer employees engaged in unwelcome conduct because of Ms. Linhart's sex that altered the terms and conditions of her employment.

79. Defendant County's conduct was severe and/or pervasive, was offensive to Ms. Linhart, and would have been offensive to a reasonable person.

80. Given the control that Defendant County exercised over the day-to-day terms and conditions of her employment, as further set forth above, Defendant County was a joint "employer" of Ms. Linhart within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

81. In the alternative, to the extent that Defendant County was not Ms. Linhart's joint employer, Defendant is liable to Ms. Linhart for a hostile work environment under a third-party interference theory.

82. By failing to prevent and/or correct the sexual harassment toward Ms. Linhart,

Defendant County created a hostile work environment because of Ms. Linhart's sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

83. As a direct and proximate result of Defendant County's conduct, Ms. Linhart has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

### Count II
### Title VII: Retaliation
### Linhart v. County of Erie

84. Plaintiff incorporates the allegations of Paragraphs 1 through 83 as if fully restated.

85. Defendant County took actions that directly and proximately caused Stairways to discharge Ms. Linhart in retaliation for her complaint of sexual harassment.

86. Given the control that Defendant County exercised over the day-to-day terms and conditions of her employment, as further set forth above, Defendant County was a joint "employer" of Ms. Linhart within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

87. In the alternative, to the extent that Defendant County was not Ms. Linhart's joint employer, Defendant is liable to Ms. Linhart for retaliation under a third-party interference theory.

88. As a direct and proximate result of Defendant County's conduct, Ms. Linhart has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

### Count III
### Section 1983: Denial Equal Protection
### Linhart v. Stevens

89. Plaintiff incorporates the allegations of Paragraphs 1 through 88 as if fully restated.

90. In engaging in the sexual actions set forth herein, Defendant Stevens denied Ms. Linhart equal protection because of her sex, in violation of the Fourteenth Amendment of the U.S. Constitution.

91.     Defendant Stevens acted under color of state law, by virtue of the authority granted to him by Defendant County, in engaging in the sexual actions toward Ms. Linhart.

92.     As such, Defendant Stevens is liable to Ms. Linhart pursuant to 42 U.S.C. § 1983.

93.     As a direct and proximate result of Defendant Stevens' conduct, Ms. Linhart has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

WHEREFORE, Plaintiff demands judgment against Defendants and requests that the Court order the following relief:

a. Defendant shall pay Plaintiff compensatory damages for emotional distress, humiliation, inconvenience, and like injuries under all Counts;

b. Defendant shall compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, grossed up for negative tax consequences, under Count II;

c. Defendant shall reinstate Plaintiff into the position she held, together with all benefits incident thereto, including, but not limited to wages, commissions, stock units, fringe benefits, training and seniority; or shall provide Plaintiff with front pay in the event reinstatement is not feasible, under Count II;

d. Defendant Stevens shall pay Plaintiff punitive damages to punish Defendant and deter like conduct under Count III;

e. Defendant shall be enjoined from discriminating or retaliating against Plaintiff in any manner that violates Title VII and/or the U.S. Constitution;

f. Defendant shall pay prejudgment interest; and

g. Plaintiff shall be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

h. Plaintiff shall be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

**ELZER LAW FIRM, LLC**

<u>/s/ Christine T. Elzer</u>
Christine T. Elzer
Pa. I.D. No. 208157
Tamra Van Hausen
Pa. I.D. No. 330577

100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 230-836

Attorneys for Plaintiff