IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REBECCA LINHART,                  )
              Plaintiff        )      C.A. No.  23-114 Erie
     v.                           )
                      )      District Judge Susan Paradise Baxter
COUNTY OF ERIE and JASON          )
STEVENS,                          )
             Defendants.       )

**MEMORANDUM OPINION**

**I.**    **INTRODUCTION**

    **A.**    **Relevant Procedural History**

Plaintiff Rebecca Linhart, brings this action against Defendants County of Erie ("Erie County") and Jason Stevens ("Stevens"), alleging several claims arising from sexual harassment she allegedly experienced while she was providing mental health services to inmates at Erie County Prison ("ECP"). In particular, Plaintiff alleges that Defendant Erie County violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), by subjecting her to a hostile work environment (Count I) and/or retaliation (Count II), and that Defendant Stevens, a lieutenant at ECP, engaged in sexual conduct toward her that violated her equal protection rights under the fourteenth amendment to the United States Constitution (Count III), and constituted battery (Count IV) and assault (Count V) under Pennsylvania state tort law.

Defendants have filed a motion to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 11]. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 14], arguing that she has pleaded plausible claims as to all five

1

counts of her amended complaint. This matter is now ripe for consideration.

**B.**    **Relevant Factual History**[1]

Plaintiff was employed at Stairways Behavior Health, Inc. ("Stairways") from on or about June 28, 2021, to June 17, 2022. (ECF no. 9 at ¶ 9). During the entire term of this employment, Plaintiff was assigned to work as a Licensed Practical/Psychiatric Nurse at the Erie County Prison ("ECP"), to provide mental health services to inmates at ECP pursuant to a contract between Stairways and Defendant Erie County. (Id at ¶¶ 10-12). When Plaintiff began working at ECP she was required to take two days of computerized training regarding ECP's policies and procedures, which she was expected to follow. (Id at ¶¶ 14, 17). When an issue or problem arose at ECP, Plaintiff was instructed to speak with, and obey the orders of, a Captain or Lieutenant employed by Defendant Erie County. (Id at ¶¶ 19, 21). All decisions that Plaintiff recommended regarding inmates' psychiatric care and housing required the approval of a Lieutenant. (Id at ¶ 23). On one occasion, Plaintiff was required by a Lieutenant to work past her scheduled end time, and on another occasion, she was required to accompany Erie County employees on an inmate hospital transport outside the prison, even though leaving the facility was outside the scope of her regular duties. (Id at ¶¶ 26-28).

Plaintiff generally alleges that the work environment at ECP "was pervaded by comments and actions of an openly sexual nature" (Id at ¶ 33). In particular, Plaintiff alleges that Defendant Stevens was "regularly flirtatious" with her and often visited her office multiple times in the same day. (Id. at ¶ 34). On one such occasion, Defendant Stevens stood next to Plaintiff while she was sitting at her desk, so that his crotch was at her eye level, and asked her to "see if you

---

[1] The factual history set forth herein has been gleaned from the allegations of Plaintiff's amended complaint [ECF No. 9], which are accepted as true for purposes of considering Defendants' motion, to the extent such allegations are

can make it move," referring to his penis. (Id at ¶¶ 35-36). On another occasion in or around

early 2022, Defendant Stevens spanked Plaintiff's rear end, in response to which she responded,

"that was ballsy." (Id at ¶¶ 38, 40). In reply, Defendant Stevens stated that "ballsy" would have

been if he had lifted his middle finger upward and gave her a little rectal stimulation, which he

demonstrated by moving his finger in a suggestive motion as he spoke. (Id at ¶ 41).

In addition to Defendant Stevens' alleged conduct, Plaintiff details the following

examples of workplace conduct at ECP:

(1)     In or around April 2022, Captain Sean Bolt confided to Plaintiff
        that he wanted to have an affair with a married woman, which
        gave Plaintiff the impression that he was interested in having an
        affair with her. Shortly thereafter Captain Bolt began to text a
        married counselor who "openly bragged that she had Captain Bolt
        up all night with a 'boner.' The counselor also showed Plaintiff
        several sexually suggestive "memes" that Captain Bolt had sent
        her. (Id. at ¶¶ 43-49).

(2)     Deputy Warden Bryant openly flirted with Plaintiff's coworker,
        Larissa, in the Psych office and at team meetings and began
        treating Plaintiff in a "less than favorable manner" after
        she told Larissa that she was tired of watching the "dating game."
        (Id. at ¶¶ 50-54)

(3)     On one occasion, Corrections Officer Patterson blocked Plaintiff
        from walking around him and place his chest against hers stating,
        "I just wanted to feel them up close." (Id. at ¶¶ 56-57).

(4)     On one occasion, Plaintiff attempted to access the RHU, but
        instead of buzzing her in, Corrections Officer Jules asked "what's
        the password?" When she replied she did not know the password,
        Jules told her to ask Larissa and then followed after Plaintiff to the
        Psych office where he asked Larissa to "sing the song." Larissa
        then began singing a song called "F*ck the pain away" and did a
        sexy dance. When Plaintiff later attempted to access the RHU,
        Jules again asked her for "the password" and, when Plaintiff
        refused to sing the sexually explicit song, he waited several
        minutes before letting her into the RHU. (Id. at ¶¶ 58-64).

---

well-pleaded.

(5)     During a meeting with pod counselors and Psych counselors
employed by Stairways, Heather Martin, a counselor employed by
Erie County, made several sexually inappropriate remarks,
including a reference to "69ing" with Defendant Stevens. Then, at
another meeting, Counselor Martin commented that she had more
pornography on her phone than the average person, and also
claimed that she had recently bought a 70-inch television to watch
pornography because she "likes to see the veins." (Id. at ¶¶ 65-67).

On or about June 6, 2022, Plaintiff requested from her Stairways supervisor a change in

her weekly work schedule from five workdays to four ten-hour workdays in order to obtain

"some reprieve from the work environment" at ECP; however, her request was denied, even

though the same request had been recently approved for her coworker, Counselor Williams. (Id.

at 69-70).

On or about June 8, 2022, Plaintiff reported sexual harassment to ECP Deputy Warden

Michael Holman, who demanded that she provide specific details of the harassment. (Id. at 73-

74). In response, Plaintiff provided the following details involving a female coworker: all of the

corrections officers at ECP called the coworker "camel toe" because she wore yoga pants; she

talked about giving a male County employee a "constant boner" and showed Plaintiff dirty texts

she shared with male County employees; and she made sexually explicit comments about a male

County employee (Id. at 75). In addition, Plaintiff reported that several County employees visited

the Psych office multiple times a day to flirt with her and other Stairways employees, naming

Defendant Stevens and Captain Bolt specifically. (Id. at 76-80). Deputy Warden Holman

allegedly responded that what Plaintiff was describing was the "definition of hostile work

environment." (Id. at 81).

On June 9, 2022, Plaintiff's supervisor at Stairways asked her where she "needed to be"

in terms of compensation to remain employed; however, the next day, the supervisor told her that

there were numerous complaints about her. (Id. at ¶¶ 85-86). On June 13, 2022, Stairways asked

Plaintiff for clarification as to whether she was resigning by the end of the day on June 15, but Plaintiff responded that she was not resigning. (Id. at ¶¶ 88-89). Nonetheless, on June 17, 2022, Stairways terminated Plaintiff's employment, claiming that it was accepting her "resignation" effective immediately. (Id. at ¶ 90).

## II.   DISCUSSION

### A.   Joint Employer Under Title VII

Though at all times relevant to this action Plaintiff was admittedly a "W-2 employee of Stairways," she seeks to hold Erie County liable for her Title VII claims (Counts I and II) based on a theory of joint employer liability. Defendants counter that Plaintiff is unable to establish that Erie County was a joint employer under Title VII and, thus, cannot maintain her claims against Erie County.

The Third Circuit has recognized that two entities may be "co-employers" or "joint employers" of one employee for purposes of Title VII. Faush v. Tuesday Morning, Inc., 808 F.3d 208, 215 (3d Cir. 2015). When determining whether a joint employment relationship exists, district courts in this circuit have focused on the following three factors: "(1) the entity's 'authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;' (2) its 'day-to-day supervision of employees, including employee discipline;' and (3) its 'control of employee records, including payroll, insurance, taxes and the like.'"   Plaso v. IJKG, LLC, 553 Fed. Appx. 199, 204–05 (3d Cir. 2014) (collecting cases). "Determination of whether a defendant is a 'joint employer' under Title VII requires careful consideration of *all* the circumstances surrounding the work relationship," and no one factor is dispositive. Washington v. ABM Janitorial Servs., 2013 WL 6047494, at *4 (E.D. Pa. Nov. 15, 2013) (emphasis in original) (citations omitted).

Here, Plaintiff acknowledges that she does not allege that Erie County had control over employee records, and thus concedes the third factor (ECF No. 14, at p. 5). So, the Court will focus its consideration on the first two factors of the joint employer test.

**1.**     **Authority to hire and fire, promulgate work rules, and set conditions of employment**

Defendants assert that the amended complaint does not contain "any allegation that the County had authority to hire and/or fire Plaintiff, promulgate her work rules and assignments, and set her compensation, benefits, and hours." (ECF No. 12, at p. 10). The Court disagrees.

Although there is no dispute that Plaintiff was hired and ultimately terminated by Stairways (accepting as true Plaintiff's allegation that she did not resign), Plaintiff's allegations indicate that Erie County did maintain and exercise control over whether she would be permitted to work at ECP. In particular, Plaintiff alleges that, if Plaintiff disobeyed an order of a Captain or Lieutenant at ECP, she would be considered insubordinate and subject to discipline and/or termination (ECF No. 9, at ¶ 21). Plaintiff alleges further that she was informed by her team leader at ECP on more than one occasion that, "if Erie County did not like a Stairways employee, they would not have a job." (Id. at ¶ 31). In addition, Plaintiff alleges that her termination was ultimately caused by numerous complaints about her that Stairways received from Erie County employees. (Id. at ¶¶ 86-87, 92).

Moreover, as to the promulgation of work rules and assignments, Plaintiff alleges that, when she began working at ECP, she was required to undergo two days of computerized training regarding ECP's policies and procedures, under the supervision of a "training lieutenant" employed by Erie County, and that she was required to follow those policies and procedures while at ECP. (Id. at ¶¶ 14-17). Plaintiff was also required to wear an ECP shirt while working and to use an email address assigned by ECP for all ECP employee correspondence. (Id. at ¶¶ 30,

32).  Plaintiff also alleges that, on one occasion she was required to work past her scheduled shift end time by an ECP Lieutenant (Id. at ¶ 26), and, on another occasion, an ECP Captain ordered her to accompany an inmate hospital transport outside of the prison facility, which was beyond the scope of her regular duties (Id. at ¶¶ 27-28). Significantly, Plaintiff alleges that Erie County never requested permission from Stairways before requiring her to work past her scheduled shift or to accompany the outside hospital transport (Id. at ¶ 29).

Though far from dispositive, the foregoing allegations cumulatively weigh in favor of finding that Plaintiff has satisfied the first factor for establishing Erie County as her joint employer, at the pleading stage.

### 2.    Day-day supervision

Defendants assert that the amended complaint "fails to plead any facts that [ECP] had any day-to-day supervision of her work or was able to discipline her." (ECF No. 12, at p. 11). Once again, the Court disagrees.

Significantly, Plaintiff alleges that her direct supervisor at Stairways "worked offsite at Stairways' main office, rather than onsite at [ECP]." (ECF No. 9, at ¶ 18). So, when Plaintiff encountered any issue or problem at ECP, she was "instructed to speak with a Captain or Lieutenant employed by [Erie] County," and she was expected to follow their orders or face discipline. (Id. at ¶¶ 19, 21). Plaintiff alleges further that all of her recommendations regarding inmates' psychiatric care had to be approved by a Lieutenant. (Id. at ¶ 22). Also, as noted above, ECP personal ordered Plaintiff, on separate occasions, to work past her scheduled shift and to participate in an offsite hospital transport, without first obtaining input or permission from Stairways. (Id. at ¶¶ 26-29).

Once again, though far from dispositive, the foregoing allegations cumulatively weigh in

favor of finding that Plaintiff has satisfied the second factor for establishing Erie County as her joint employer, at the pleading stage.

Based on the foregoing, therefore, the Court finds that Plaintiff has set forth sufficient allegations to show that Erie County may be considered her joint employer under Title VII at this early stage in the proceeding. As a result, the Court will consider the sufficiency of Plaintiff's Title VII claims based upon the premise that Erie County was her joint employer for purposes of Defendants' motion to dismiss.

**B.**     **Count I – Hostile Work Environment v. Erie County**

In order to state a claim of hostile work environment under Title VII, "a plaintiff must show (i) that [s]he suffered intentional discrimination because of h[er] [protected status]; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected h[er]; (iv) the discrimination would detrimentally affect a reasonable person of the same [protected status]; and (v) there is a basis for employer liability." Torres v. City of Philadelphia, 907 F.Supp.2d 681, 688 (E.D. Pa. 2012), citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). The Third Circuit has since emphasized that the correct standard is "severe or pervasive," clarifying that "the distinction 'means that 'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." Castleberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017) (citation omitted).

In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001), the Supreme Court established a framework for analyzing the "severe or pervasive" prong:

> [H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or

> abusive must be judged by looking at all the circumstances, including the
> frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work performance.

(internal citations and quotation marks omitted).

In evaluating a hostile work environment claim, the Court is mindful that "offhanded comments, and isolated incidents (unless extremely serious)" are generally not sufficient to sustain a hostile work environment claim. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment...." Id.

Here, Defendants contend that Plaintiff's hostile work environment claim must be dismissed because the amended complaint fails to describe "severe or pervasive" conduct. However, "Courts in this Circuit have… 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe [or] pervasive.'" Booker v. National R.R. Passenger Corp., 880 F.Supp.2d 575, 582 (E.D. Pa. 2012), quoting Grasty v. World Flavors, Inc., 2011 WL 3515864, at *9 n.2 (E.D. Pa. Aug. 11, 2011); Fedder v. Bloomsburg University of Pennsylvania, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024) (collecting cases). Our own district court has noted that:

> The resistance of district courts to dismiss claims at the 12(b)(6) stage
> makes good sense in light of the fact that the determination of what
> constitutes 'severe or pervasive' does not lend itself to a 'mathematically
> precise test, but instead requires that a court look to the totality of
> circumstances. This inquiry is necessarily fact-intensive; thus, summary
> judgment provides a more appropriate vehicle to resolve these issues, as
> the parties at this stage have had an opportunity to conduct discovery and
> develop their claims.

Long v. Pizza Hut (Store # 635008), 2003 WL 23019186, at *4 (W.D. Pa. Nov. 5, 2003), citing

Harris v. Forklift Sys., Inc., 510 U.S. 17, 23-24 (1993). See also Fedder, 2024 WL 580552, at *3 ("[T]he question of whether the allegations contained in [the Second Amended Complaint] are ultimately sufficient to prove that the discrimination was 'severe or pervasive' is [therefore a] question properly reserved for summary judgment and trial") (quotation omitted).

Notably, all of the cases cited by Defendants in support of their argument were decided at the summary judgment stage,[2] thus affirming the need for further factual development before the Court may properly determine whether the discriminatory conduct alleged by Plaintiff was indeed "severe or pervasive." Though the conduct alleged by Plaintiff in her amended complaint may ultimately prove insufficiently "severe or pervasive" to have caused a hostile work environment under Title VII, the Court finds that Plaintiff's allegations are sufficient at the pleading stage to overcome Defendants' motion to dismiss.

---

[2] See Saidu-Kamara v. Parkway Corp., 155 F.Supp.2d 436, 439-40 (E.D. Pa. 2001) (granting employer summary judgment where plaintiff asserted her supervisor assaulted her, made suggestive comments, and propositioned her on multiple occasions); Dreshman v. Henry Clay Villa, 733 F.Spp.2d 597, 602 (W.D. Pa. 2011) (granting employer summary judgment where plaintiff, a former male stripper, alleged that he was verbally harassed and subjected to sexually charged comments from co-workers, propositioned for a lap dance by a co-worker, and inappropriately touched by co-workers on five occasions); Obergantschnig v. Saw Creek Estates Community Ass'n, Inc., 2013 WL 5676328, at *7 (E.D. Pa. Oct. 18, 2013) (granting employer summary judgment where plaintiff alleged that a co-worker rubbed her shoulders and put his hands around her waist, asked her out on dates, spread rumors that she had sexual relations with a supervisor and had been a "hooker in New York," and called her a "slut," whore," and c**t"); Fahnbulleh v. Carelink Cmty. Support Servs., Inc., 2009 WL 4591712, at *1 (E.D. Pa. Dec. 4, 2009) (granting employer summary judgment where plaintiff alleged that she was subjected to sexually inappropriate comments and one incident during which a co-worker touched her back, shoulder, and breast over a two-month period); Willauer v. Riley Sales, Inc., 2009 WL 2959822, at *1 (E.D. Pa. Sept. 16, 2009) (granting employer summary judgment where plaintiff alleged that her supervisor complimented her on her shirts and stared at her breasts between 10 and 15 times over the course of one year, scribbled plaintiff's name numerous times on a piece of paper, suggested that she stay in a hotel room with her, and watched her change into a bathing suit); McGraw v. Wyeth-Ayerst Lab., 1997 WL 799437 (E.D. Pa. Dec. 30, 1997) (granting employer summary judgment where plaintiff alleged that her supervisor repeatedly asked her for a date and kissed her without her consent, "forcing his tongue into her mouth" on one occasion, and touched her face); Carattini v. Woods Servs., 2010 WL 44753 (E.D. Pa. Feb. 4, 2010) (granting employer summary judgment where plaintiff alleged a single incident of a co-worker grabbing her vagina and breasts); Swanson v. Northwestern Huiman Servs., 2006 WL 3354145 (E.D. Pa. Nov. 30, 2006) (granting employer summary judgment where plaintiff alleged that defendant told her he looked good in jeans, grabbed his buttocks, and asked him on dates over a two month period); Bauder v. Wackenhut Corp., 2000 WL 340191 (E.D. Pa. Mar. 23, 2000) (granting employer summary judgment where plaintiff alleged that supervisor grabbed her buttocks and male co-workers discussed the location of her tattoos); Jankowski v. Sage Corp., 2010 WL 1253542 (W.D. Pa. Mar. 24, 2010) (granting employer summary judgment where plaintiff alleged her supervisor touched and/or rubbed her back and shoulders on two occasions, "brushed up on her" on four occasions, and implied that she could satisfy him more

**C.**      **Count II – Retaliation v. Erie County**

To establish a claim for retaliation under Title VII, a plaintiff must show that: "(1) [s]he was engaged in protected activities; (2) the employer took adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Glanzman v. Metropolitan Mgmt. Corp., 391 F.3d 506, 508-09 (3d Cir. 2004), citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

Here, Plaintiff alleges that Erie County took "actions that directly and proximately caused Stairways to discharge [Plaintiff] in retaliation for her complaint of sexual harassment." (ECF No. 9, at ¶ 101). As with Plaintiff's hostile work environment claim, Plaintiff's retaliation claim is based upon Erie County's alleged status as Plaintiff's joint employer under Title VII, which this Court has already upheld at the pleading stage. Defendants argue that this claim must be dismissed because Plaintiff has "failed to plead sufficient facts of a causal connection between her conversation with Deputy Warden Holman [regarding her complaints of sexual harassment] and the termination of her employment by Stairways." (ECF No. 12, at p. 21). The Court disagrees.

Plaintiff has alleged that, on or about June 8, 2022, she reported sexual harassment to Deputy Warden Holman, naming Defendant Stevens and Captain Bolt specifically (ECF No. 9, at ¶¶ 73, 80). On or about the same day, Plaintiff alleges that two different Deputy Wardens met with Plaintiff's team leader at Stairways, and also met with Defendant Stevens and Captain Bolt, allegedly regarding Plaintiff's sexual harassment complaint. (Id. at ¶¶ 82-84). The next day, Plaintiff's Stairways supervisor informed her that Stairways wanted to retain her as an employee

---

than his wife).

and asked her where she "needed to be" in terms of compensation; however, the following day, the same supervisor informed Plaintiff that he had received a number of complaints about her, allegedly from Erie County employees. (Id. at ¶¶ 85-87). Only seven days later, on June 17, 2022, Stairways terminated Plaintiff's employment. (Id. at ¶ 90). These allegations are sufficient to establish a causal link between Erie County's alleged actions that occurred after Plaintiff's sexual harassment complaint and her subsequent termination by Stairways, at the pleading stage. Defendants' motion to dismiss Plaintiff's retaliation claim will be denied accordingly.

**D.      Count III – Denial of Equal Protection v. Defendant Stevens**

Plaintiff asserts a claim against Defendant Stevens under 42 U.S.C. § 1983, alleging that Stevens, under color of state law, denied her equal protection because of her sex, in violation of the fourteenth amendment of the United States Constitution. Defendants seek to have this claim dismissed, arguing that Plaintiff has failed to show that Defendant Stevens acted under color of state law, and has also failed to establish that she was treated differently by Defendant Stevens from others similarly situated. (ECF No. 12, at p. 23). Once again, Defendants' arguments are unavailing.

**1.      Color of State Law**

First, Defendants assert that Plaintiff has failed to show that Stevens had any supervisory position over her at the time of the alleged sexual harassment, which, they argue, is required to establish that he was acting under color of state law. In support of this argument, Defendants cite Zielinski v. Pennsylvania State Police, 108 Fed. Appx. 700, 703 (3d Cir. 2004), where the Third Circuit observed that, "Generally, in order to act under the color of state law, the wrongdoer must be in a supervisory position in relation to the plaintiff." However, Defendants' reliance on Zielinski is, at best, misplaced, and, at worst, disingenuous, because the Zielinski Court went on

12

to find that "the fact that [the wrongdoer] was **not** [the plaintiff's] formal supervisor at the time

of the harassment … is **not** dispositive." Id. at 704 (emphasis added). In making this finding, the

Third Circuit Court cited its prior decision in Bonenberger v. Plymouth Twp., 132 F.3d 20 (3d

Cir. 1997), where the Court noted,

> If a state entity places an official in the position of supervising a lesser-ranking employee and empowers him or her to give orders which the subordinate may not disobey without fear of reprisal, that official wields sufficient authority to satisfy the color of law requirement of 42 U.S.C. § 1983.

Id. at 24-25.

Here, Plaintiff has alleged that Erie County's Lieutenants and Captains (including

Defendant Stevens) "exercised substantial control over [Plaintiff's] employment" and that "[i]f

[Plaintiff] disobeyed the order of a Captain or Lieutenant, it would be considered insubordination

that would subject her to discipline and/or termination." (ECF No. 9, at ¶¶ 20-21). In addition,

Plaintiff alleges that all of her recommendations regarding inmates' psychiatric care and housing

had to be approved by a Captain or Lieutenant, which caused her to "visit the Lieutenants' office

multiple times per workday to obtain their signatures on required forms." (Id. at ¶¶ 23-24). These

allegations are enough to establish that Defendant Stevens had sufficient authority over Plaintiff

to satisfy the color of law requirement of 42 U.S.C. § 1983.

### 2.      Disparate Treatment

Defendants next argue that "the Amended Complaint does not establish an Equal

Protection claim where it does not identify that the Plaintiff was treated differently by the

Defendant from others similarly situated, with specific instances of differential treatment." (ECF

No. 12, at p. 23). However, while equal protection claims have "typically been concerned with

governmental classifications that 'affect some groups of citizens differently than others,'"

Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 592 (2008) (citation omitted), in the context of public employment, sexual harassment can also amount to a deprivation of the equal protection rights afforded under the Fourteenth Amendment. See, Davis v. Passman, 442 U.S. 228 (1979); Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990). To establish liability for sexual discrimination against an individual defendant, a plaintiff must show some affirmative conduct by that individual. Andrews, 895 F.2d at 1478. Affirmative conduct may be proven "through allegations of … direct discrimination by the [individual]." Id. Such is the case here. Thus, Defendants' argument that Plaintiff must state more specific allegations of disparate treatment to establish a cognizable equal protection claim is without merit in the context of this case.[3]

For the foregoing reasons, therefore, Defendants' motion to dismiss Plaintiff's equal protection claim against Defendant Stevens will be denied.

**E.**     **Count V – Assault v. Defendant Stevens**[4]

Plaintiff alleges that, "In making a lewd gesture [with his finger] toward [Plaintiff] after spanking her rear end [signifying rectal stimulation], and in placing his crotch in her face, Defendant Stevens, acting under color of state law, willfully attempted or threatened to inflict bodily injury on [Plaintiff]," and had "apparent ability" to do so (ECF No. 9, at ¶¶ 114-115). As

---

[3] Defendant also argues that "an individual as a public employee cannot assert an Equal Protection claim," based on the premise that "the class-of-one theory of equal protection does not apply in the public employment context," as the Supreme Court noted in Engquist, 553 U.S. at 599. However, the equal protection claim in this case is not based on a "class-of-one" theory but is premised on sex discrimination. Thus, Defendants' argument is inapposite.

[4] Defendants have not sought to dismiss Plaintiff's claim of battery against Defendant Stevens (Count IV), conceding that it "cannot be challenged." (ECF No.12, at p. 2). Nonetheless, Defendants assert that both Plaintiff's claims of battery and assault, as pendant state law claims, "need not be considered by the Court where the federal law claims that are the basis for federal jurisdiction have no legal or factual justification in the Amended Complaint." Though this is a correct statement of the Court's discretion to exercise supplemental jurisdiction over pendant state law claims in the event all federal law claims are dismissed, such is not the case here, since the Court has determined that Plaintiffs' federal law claims will survive Defendants' motion to dismiss. Thus, Plaintiff's battery claim will be considered beyond the pleading stage.

a result, Plaintiff claims that she has suffered "extreme emotional distress, humiliation, inconvenience, and like injuries." (Id. at ¶ 116).

Defendants argue that Plaintiff must claim that "something more occurred following [the alleged] actions, such as battery or contact," in order to "meet the legal requirement for an assault." (ECF No. 12, at p. 24). Then, paradoxically, Defendants declare that "In the absence of an averment that these two [alleged] actions created an imminent fear of a battery (where the alleged battery occurred *before* the act on which the assault is based), the Amended Complaint does not state a cause of action for assault against Stevens." (Id. at pp. 24-25) (emphasis in original). So, apparently, Defendants believe that a battery must be alleged to have occurred either before or after the alleged assault, in order to state a cause of action for assault. This is simply a misapprehension of the law.

Under Pennsylvania law, an assault is "*an act* intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960) (emphasis in original) (citation omitted). There is no requirement that a battery must actually occur in order for there to be an assault. Plaintiff's allegations meet the legal definition of an assault and, thus, are sufficient to state a cognizable claim at the pleading stage. Defendants' motion to dismiss such claim will be denied, accordingly.

An appropriate Order follows.